UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS D. RICE,                        :
                                       :
        Plaintiff                      :  No. 4:CV-08-1051
                                       :
    vs.                                :  (Complaint Filed 05/30/08)
                                       :
                                       :  (Judge Muir)
DANIEL B. SLASHINSKI, et al.,          :
                                       :
        Defendants                     :

### **MEMORANDUM AND ORDER**

January 26, 2010

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Plaintiff, an inmate formerly confined in the Monroe County Correctional Facility[1], filed this civil rights action pursuant to 42 U.S.C. § 1983. The named defendants are three employees of the Monroe County Correctional Facility: former Deputy Warden Daniel Slashinski; Lt. Garry Haidle; and Sgt. Stephanie Viera. Plaintiff complains that defendants have interfered and/or withheld his legal and personal mail, without a legitimate penological interest. (Docs. 1, 10, complaint and amended complaint).

---

1. Plaintiff was released from custody subsequent to the filing of this action. He currently resides at RR 1, Box 1564, Canton, Pennsylvania.

Presently pending before the Court is defendants' motion for summary judgment. (Doc. 27). The motion is fully briefed, and is ripe for disposition. For the reasons set forth below, the motion will be granted.

**I.     Summary Judgment**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An

2

issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party

opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

## II. **Statement of Facts**

Plaintiff claims that "while [he] found that [his] legal mail had been delayed as early as January 25, 2008, [he] specifically found certain mail items to be missing from February 11, 2008, to February 16, 2008." (Doc. 1, complaint at ¶ 6). He states that "legal mail sent on January 17, 2008 took until January 28, 2008 to reach its destination, after traveling a distance of less than 40 miles" and that "[his] mail usually travels this same distance in 72 hours or less." Id. at ¶ 8. In addition, he claims that "personal mail [he]

4

sent to [his] wife on January 18, 2008, February 11, 2008 and February 16, 2008" and "personal mail [he] mailed to friends who live less than five miles from the jail" had not reached its destination as of the filing of plaintiff's complaint on May 14, 2008.  Id. at ¶¶ 9, 10.

Plaintiffs states that "all [his] legal mail included information about [his] application to the courts for a furlough" and his "personal letters all expressed [his] belief that [his] mail was being tampered with" as well as "instructions to the parties written to on how to contact postal authorities as well as the facility in order to file complaints regarding information [he] had received concerning [his] mail."  Id. at ¶ 11.

On February 18, 2008, plaintiff learned from Correctional Officer ("CO") Kamnetter that "an order had been issued to hold a certain inmate's mail in [plaintiff's] block, but she was not sure if it was [plaintiff's] or not" and that "the order had been in place for several days."  Id. at ¶ 16.

On February 19, 2008, plaintiff filed an Informal Resolution Form requesting that an investigation into his mail situation be conducted.  Id. at ¶ 17.

5

On February 20, 2008, plaintiff states that "CO Polnasick informed [him] that at [Polnasick's] shift briefing that night the whole shift was informed that the order to hold [plaintiff's] mail had been rescinded." Id. at ¶ 18.

On February 21, 2008, plaintiff spoke with Shift Sgt. Viera, who told him that "her shift had nothing to do with the holding of [plaintiff's] mail, that the order had come from the day shift." Id. at ¶ 21.

On February 28, 2008, Deputy Warden Slashinski "called [plaintiff] out for a private meeting in the attorney/client interview room" and "told [plaintiff] that he had personally checked into [plaintiff's] mail matter and that he could positively say that there was never an order regarding [his] mail" and to "please believe [him] on this and please drop the issue." Id. at ¶ 24.

On February 28, 2008, plaintiff's "long standing privilege [he] had been granted in using the computer on days [he] was not tutoring at the education building was suspended." Id. at ¶ 25.

On March 5, 2008, plaintiff filed a complaint with Warden Marlene Chamblee regarding his mail, the information he had

6

discovered concerning his mail and about the meeting he had with Deputy Warden Slashinski. Id. at ¶ 26. That same day Warden Slashinski again met with plaintiff, this time plaintiff claims that he was "very agitated and repeatedly begged [plaintiff] not to pursue the mail issue any further" and that if plaintiff agreed to drop the mail issue he would see that plaintiff's computer privileges were reinstated. Id. at ¶ 27.

On March 11, 2003, Warden Chamblee sent Sgt. Frable to speak with plaintiff concerning his mail issue. Sgt. Frable told plaintiff that an investigation was being conducted into plaintiff's mail situation. Id. at ¶ 30.

On March 13, 2008, Deputy Warden Slashinski came to the education class where plaintiff was working on the computer and told plaintiff that he was aware that the Warden was making inquiries into plaintiff's mail situation. Id. at ¶ 31. He told plaintiff that he had "found some of [plaintiff's] missing mail and assured [him] that he had seen to it that it went out of the facility." Id. He than asked plaintiff if he would tell the Warden that "he had cleared up the mail problem." Id.

On March 18, 2008, plaintiff learned that Lt. Haidle had turned over to the Warden an email issued by Deputy Warden

7

Slashinski that directed that plaintiff's mail be held. Id. at ¶ 33. That evening plaintiff wrote to Warden Chamblee informing her that he was made aware of the email and that he planned on instituting an action against Deputy Warden Slashinski. Id. at ¶ 34.

On March 19, 2008. Deputy Warden Slashinski again met with plaintiff. Id. at ¶ 35. Plaintiff states that "at this point he was very dejected and he apologized to [plaintiff] for lying about [his] mail being held" and that he "kept saying he was trying to change a policy he felt was not right in the facility concerning money orders but went about it the wrong way." Id.

On March 27, 2008, plaintiff claims that he was "informed that Deputy Warden Slashinski had resigned his position." Id. at ¶ 38.

On May 30, 2008, plaintiff filed the instant action in which he alleges that Deputy Warden Slashinski's "claim that his mail was held in response to a money order had no validity, and if true, could not meet the required mandates of law; which allows restrictions on incoming and outgoing mail only for valid penological reasons, such as introduction of contraband,

8

threats to security, the public, or if requested by the recipient." (Doc. 10, amended complaint at ¶ 45). He further alleges that defendants Lt. Haidle and Sgt. Viera, "knowing that the order was wrong, and unlawful, each exhibited deliberate indifference to the excessive force against [plaintiff] by not going to the warden about the wrong, or notifying law enforcement authorities." Id. at ¶ 58. Thus, plaintiff seeks compensatory and punitive damages for the defendants' alleged "actions that violated [plaintiff's] First, Sixth, Eighth, and Fourteenth Amendment Rights through the unwarranted detainment, loss and misdirection of his personal and legal mail, as well as his property." (Doc. 10, amended complaint at ¶ 59).

On July 21, 2008, Defendants filed a motion to dismiss plaintiff's complaint. (Doc. 11).

By Order dated March 16, 2009, this Court denied defendants' motion to dismiss, finding that Rice alleged sufficient facts that defendants tampered with his outgoing legal and personal mail, without a legitimate penological interest. Id. Specifically, the Court noted that defendants, themselves, stated in their brief in support of their motion to

9

dismiss, that "the reason for Slashinski's order is not clear at this stage in the proceedings." (Doc. 12, brief in support). Thus, the Court allowed plaintiff's interference with mail claim to proceed. Id.

On July 15, 2009, Defendants filed a motion for summary judgment. (Doc. 27). In support of their motion, defendants submit an Incident Report prepared by defendant Slashinski, outlining his involvement in requesting that a temporary hold be placed on Rice's outgoing mail on February 8, 2008, so that he may inspect it pursuant to the 37 Pa.Code § 95.234.[2]  (Doc.

---

2.  37 Pa. Code § 95.234 states that inmates shall be permitted to send and receive mail consistent with the following:

> (1) Incoming and outgoing mail may be examined for contraband.
> (2) Incoming and outgoing mail to and from public officials, courts and attorneys will not be opened for purposes of examining for contraband unless the interested inmate is present.
> (3) Incoming and outgoing mail to a person or entity may be read by the prison warden if reasonable grounds exist to believe that receipt of the mail is likely to jeopardize prison security or public safety and welfare, or both.
> (4) The sending and receipt of mail shall be restricted or prohibited for valid penological reasons such as introduction of contraband, threats to security or the public, or when requested by intended recipients.

32, Ex. A). Specifically, defendant Slashinski states the following:

> "On the above date and time I was asked by Amy Weissbach if we would be able to review outgoing mail from Inmate Thomas Rice and his cell mate. This was due to Inmate Rice claiming that he did money orders requested through the facility. At 1202 hours I went down to the Records Office to use that computer due to my computer terminal being down. I then emailed the First Shift Supervisors that if there was any outgoing mail for Inmate Rice and his cellmate Inmate Mironescue for that weekend only, that mail was to be placed onto my office desk for my review. I then would attempt to determine if there may have been any money orders in that outgoing mail.
>
> On Monday morning 2-11-2008 I checked my desk and did not see any mail as I had requested from the above named inmates. I then proceeded to the Records Office area to gather my paperwork and review reports. (approx. 0715 hours) As I was reviewing paperwork on the Records Officer desk I observed 2 addressed small envelopes approximately 8' by 5" inches in size. I then examined this outgoing mail from Inmate Thomas Rice and was unable to determine if there were any money orders inside that mail as I am not allowed to open the inmates outgoing mail. This mail was then taken up to Administration and placed into the outgoing mail box.

<u>Id</u>.

In a further support of summary judgment, defendants submit the docket sheet for the only case plaintiff had pending while he was incarcerated at the Monroe County Correctional

11

Facility. Pursuant to the Pike County Court of Common Pleas docket no. CP-52-CR-0000214-2003, the only proceedings pending before the Pike County Court during the time in question in plaintiff's complaint, were two motions for furlough; the first filed on January 28, 2008 and the second filed February 21, 2008. (Doc. 32, Ex, A, docket sheet). These motions were addressed by a hearing conducted on June 26, 2008 and subsequently denied by Order dated July 7, 2008. Id.

**III. Discussion**

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987). A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation. Morgan v. Montayne, 516 F.2d 1367 (2d Cir.1975), cert. denied, 424 U.S. 973(1976). However, the assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim. See, e.g., Antonelli v.

12

Sheahan, 81 F.3d 1422, 1431-32 (7th Cir.1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir.1993). The Court of Appeals for the Third Circuit has held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech. Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir.1995) (applying the Turner analysis), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir.1997). Recently, the Third Circuit held that the legal mail policy of state prison in opening legal mail outside the presence of the inmate violated the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff. Jones v. Brown, 461 F.3d 353 (3d Cir.2006).

Defendants have submitted documentation which establishes that plaintiff's mail was, in fact, held and inspected by defendant Slashinski, from February 8, through February 11,

13

2008, before it was mailed out of the prison. Aside from plaintiff's conclusory allegations, plaintiff submits no documentary evidence that any of his legal mail was opened out of his presence, failed to reach its destination, or resulted in injury to plaintiff.

Prisoners have a right of access to the courts. See Lewis v. Casey, 518 U.S. 343 (1996). Importantly, however, where an inmate does not allege actual injury to his ability to litigate a claim, his constitutional right to access the courts has not been violated. See id, 518 U.S. at 351-53; Oliver, 118 F.3d at 178. An actual injury is shown only where a nonfrivolous claim, or one of arguable merit, is lost. See Christopher v. Harbury, 536 U.S. 403, 415 (2003). While an issue of fact may exist as to whether defendants improperly held plaintiff's mail, plaintiff's claim fails because he has not alleged any injury as a result of the alleged incidents. Specifically, he has not alleged how the defendants' withholding of his legal mail prejudiced his efforts to pursue any legal claim, nor does the record suggest such any injury resulted from the alleged incidents. The only actual "legal mail" at issue in plaintiff's complaint is a motion for furlough that plaintiff claims was

14

mailed on January 17, 2008. Record evidence demonstrates, however, that plaintiff's motion was received and filed by the Court on January 28, 2008. Clearly, plaintiff was not affected by this delay, as the docket sheet indicates that the Court did not address plaintiff's motion until June 26, 2008. In fact, plaintiff, himself, states that defendants "did not bar my access to the Courts through their intentional detainment of my mail, but they did delay my access to the courts..." (Doc. 10, Amended Complaint, ¶ 55). Because plaintiff has not established an actual injury as a result of the alleged tampering of his legal mail, the Court will grant defendants' motion for summary judgment on plaintiff's claim regarding tampering with his legal mail.

Moreover, to the extent that plaintiff claims that personal mail he sent to his wife on January 18, 2008, February 11, 2008 and February 16, 2008 and mail sent to friends on February 12, 2008 and February 17, 2008, had not reached its destination, the Court finds that the plaintiff's First Amendment mail tampering claim is based on conclusory assertions, unsupported by any evidence in the record

indicating that the defendants were personally involved in the alleged tampering with his personal mail.

The Third Circuit Court of Appeals has specified that at summary judgment phase of the case, a claim fails as a matter of law if it is based only on the Plaintiff's unsupported allegations. See Jones v. UPS, 214 F.3d 402, 407 (3d Cir.2000) (holding that "[a]t summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."); see also Diaz v. Palakovich, 2009 WL 811712 *5 (M.D.Pa.2009) * 5 (following Jones, supra ) ("at the summary judgment stage, the conclusory allegations of the Complaint, without evidentiary support, may be disregarded.").

The plaintiff's tampering with personal mail claim is unsupported by any facts on record. There is no indication that plaintiff tendered his personal mail to any of the named defendants for delivery and that such mail did not leave the prison. Thus, there is no personal involvement in the alleged tampering with the Plaintiff's personal mail. (Doc. 84-2, pp. 52, 68, 79, and 86). We shall therefore grant defendant's

motion for summary judgment with respect to the plaintiff's claim of tampering with personal mail.

Finally, the plaintiff alleges that "a whole box of his personal property turned up missing out of what is supposed to be a secure storage area." (Doc. 10, Amended complaint at ¶ 52). Thus, plaintiff contends that prison officials interfered with his personal property.

In Hudson v. Palmer, 468 U.S. 517, (1984), the Supreme Court held that in the prison context even an "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533.

Here, the plaintiff alleges that certain prison officials mishandled, confiscated and withheld his personal property. No allegation have been made that there is no state law remedy for these claims. Therefore, the Court will dismiss any claim that the defendants mistreated the plaintiff's personal property

An appropriate Order accompanies this Memorandum Opinion.

                                s/Malcolm Muir  
                                MUIR  
                                United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS D. RICE,                  :
                                 :
       Plaintiff                 :  No. 4:CV-08-1051
                                 :
    vs.                          :  (Complaint Filed 05/30/08)
                                 :
                                 :  (Judge Muir)
DANIEL B. SLASHINSKI, et al.,    :
                                 :
       Defendants                :

## ORDER

January 26, 2010

For the reasons set forth in the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment (Doc. 27) is **GRANTED**. Judgment is hereby entered in favor of the defendants and against the plaintiff.

2. Plaintiff's motions to compel discovery and for enlargement of discovery (Docs. 26, 28) are **DISMISSED** as moot.

3. The Clerk of Court shall CLOSE this case.

4. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

s/Malcolm Muir

MUIR
                        United States District Judge